# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00761-COA

IN THE MATTER OF THE ESTATE OF                                          APPELLANT
STANLEY CRAIG WATSON, DECEASED:
BRENDA SMITH

v.

THE ESTATE OF STANLEY CRAIG WATSON                          APPELLEE

DATE OF JUDGMENT:                    03/31/2023
TRIAL JUDGE:                         HON. ASHLEE E. COLE
COURT FROM WHICH APPEALED:           JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:              PAULETTE McLEOD TURNER
ATTORNEYS FOR APPELLEE:              DAVID N. HARRIS JR.
                                     MARTIN A. SEIB
NATURE OF THE CASE:                  CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:                         REVERSED AND REMANDED - 10/01/2024
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., SMITH AND EMFINGER, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.    The Jackson County Chancery Court entered a final judgment ordering the payment of creditors' claims, disbursement of remaining assets, and closing of the estate of Stanley Watson (the Estate). Stanley's mother, Brenda Smith, appeals from the chancellor's final judgment giving priority to claims for attorneys' fees and denying all other claims, including the one filed by Brenda. On appeal, Brenda argues that the chancellor failed to follow the statutory guidelines applicable to the administration of insolvent estates. Upon review, we agree. We therefore reverse the chancellor's judgment and remand for the chancellor to make appropriate findings of fact and conclusions of law in accordance with the statutory

requirements governing the distribution of assets from an insolvent estate.

## FACTS

¶2. Stanley died in September 2018. In October 2018, Brenda filed a complaint to admit the Estate to probate and to grant letters of administration. Martin Seib served as the Estate's attorney throughout the probate proceedings. In April 2019, Seib filed a petition for approval of the Estate's accounting, to address creditors' claims against the Estate, and to sell real property belonging to the Estate.

¶3. The creditor claims against the Estate included one by Singing River Health System (Singing River) that totaled $1,847.83, and one by Brenda in the amount of $20,079. Singing River's claim sought reimbursement for services provided to Stanley at the end of June 2018, shortly before his death. As Seib stated in his filing, Brenda's claim sought reimbursement "for preservation of the assets of the [E]state, funeral expenses[,] and other matters as outlined in the inventory." In July 2019, the chancellor entered an order approving the payment of Singing River's reduced claim for $1,016.37. The chancellor's order did not address Brenda's claim against the Estate.

¶4. In July 2020, Seib filed a final accounting and petition to disburse assets. Seib acknowledged in his filing that Brenda had utilized both her "personal funds and time" for expenses that included but were not limited to "attorney[']s fees, funeral expenses, taxes, appraisals[,] and other matters necessary for the probate" of the Estate and that Brenda sought a total reimbursement of $20,079. The chancellor entered no order regarding the final accounting, and in October 2020, Seib filed an amended final accounting and petition to

disburse that provided the same information regarding Brenda's claim against the Estate. On October 7, 2020, the chancellor entered an order that approved the final accounting and directed the petition for disbursement to be placed on the chancery court's docket for consideration.

¶5. In his role as the Estate's probate attorney, Seib inquired with Stanley's employer about the payment of benefits from Stanley's employee-savings investment plan. Stanley's employer eventually removed the matter from the chancery court to federal court to resolve the issue of the payment of benefits from Stanley's employee-savings investment plan. Seib sought the legal assistance of David Harris Jr., an attorney with experience in federal courts, to handle the matter while it was litigated in federal court. A confidential settlement agreement was ultimately reached, and the federal court remanded the Estate's remaining state-law claims to the chancery court.

¶6. Following the remand of the state-law claims to chancery court, Seib filed another final accounting and petition to distribute on October 28, 2022. Seib stated that due to the federal court proceedings and their effect on the administration and closing of the Estate, both he and Harris had accrued substantial attorney's fees. Harris submitted a claim against the Estate for attorney's fees amounting to $12,959.37, and Seib submitted a claim against the Estate for attorney's fees totaling $18,125. In Seib's filing, he again noted Singing River's and Brenda's claims against the Estate. In addition, Seib provided that the Estate's account only held funds totaling $29,695.28.

¶7. After a hearing, the chancellor entered her final judgment on March 31, 2023. The

3

chancellor found that the following claims had been filed against the Estate and remained outstanding: (1) Harris's claim of $12,959.37 for attorney's fees; (2) Seib's claim of $18,125 for attorney's fees; (3) Singing River's claim of $1,847.83 for healthcare services; and (4) Brenda's slightly reduced claim still exceeding $18,000 for various Estate-related expenses. Because the Estate's account only contained a balance of $29,695.28, the chancellor concluded that the Estate was insolvent and possessed insufficient funds to satisfy all the creditors' outstanding claims.

¶8. Without any findings on or analysis of Brenda's or Singing River's claims, the chancellor determined that both Harris's and Seib's attorney's fees were "reasonable and appropriate" and granted both claims against the Estate. The chancellor ordered that Harris receive full payment for his attorney's fees and that Seib receive the remaining funds held in the Estate's account, which totaled $16,735.81. The chancellor noted that after the payment of the attorneys' fees, no other assets remained for payment of creditors' claims. As a result, the chancellor denied the claims filed by Singing River and Brenda. The chancellor ordered Brenda to transfer possession of specific items of personal property to her ex-husband, Glenn Watson. The chancellor then declared that the Estate would be closed after completion of the payment of the attorneys' fees and the transfer of the personal property to Glenn.

¶9. Brenda moved for the chancellor to reconsider her final judgment, for a new trial, or for relief from the final judgment. Brenda asserted that in giving priority to the claims for attorneys' fees and ordering those claims to be paid in full, the chancellor failed to follow the

4

statutory guidelines governing the distribution of insolvent estates. The chancellor denied Brenda's motion. Aggrieved, Brenda appeals.

## STANDARD OF REVIEW

¶10. This Court will affirm a chancellor's factual findings "when they are supported by substantial evidence unless the chancellor abused [her] discretion, was manifestly wrong, [was] clearly erroneous[,] or [applied] an erroneous legal standard . . . . We review a chancellor's interpretation and application of the law de novo." *Fox v. Fox*, 381 So. 3d 391, 394 (¶9) (Miss. Ct. App. 2023) (citations and internal quotation mark omitted).

## DISCUSSION

¶11. No dispute exists that the Estate had insufficient assets to fully satisfy the creditors' claims at the time of closing. After declaring the Estate insolvent, the chancellor was required to administer the Estate's assets in accordance with statutory guidelines. To properly administer an insolvent estate, a chancellor must "examine . . . the validity of each claim which has been probated and registered and such other claims as may have been filed with the clerk." Miss. Code Ann. § 91-7-269 (Rev. 2021). The chancellor "shall hear evidence in support of [an] objection [to a claim], shall allow any claim that should be allowed, and shall reject in whole or in part any which is in whole or in part not well founded." *Id.*

¶12. After the chancellor has established which claims are allowed and their corresponding amounts, he or she must

> adjudge the pro rata share of each creditor, deducting first the preference
> claims and deducting from debts not due the legal interest from the time of

5

payment up to the time of their maturity; and the executor or administrator shall distribute all money amongst the creditors, in proportion to their demands.

Miss. Code Ann. § 91-7-271 (Rev. 2021). In determining the preference of the claims to be paid, Mississippi Code Annotated section 91-7-261 (Rev. 2021) clearly establishes that "the expenses of the last sickness, the funeral, and the administration, including commissions" are paid first. Once these priority claims are paid, the chancellor shall then apply any remaining estate funds toward other allowable claims on a "pro rata" basis. Miss. Code Ann. § 91-7-271.

¶13. Here, after concluding the Estate was insolvent, the chancellor ordered the payment of attorneys' fees and summarily denied all other creditors' claims, including Brenda's claim. The chancellor determined that both attorneys' fees were "reasonable and appropriate" without discussing or making relevant factual findings under the *McKee* factors.[1] Similarly, the chancellor determined that the payment of the attorneys' fees took priority over all other creditors' claims without adhering to the statutory provisions regarding the distribution of insolvent estates. Because the chancellor's final judgment did not provide supporting findings or record evidence to demonstrate compliance with the statutory requirements, we reverse the final judgment and remand the case for further proceedings consistent with Mississippi's statutory law on the administration of insolvent estates.

## CONCLUSION

¶14. Due to the lack of factual findings and adherence to statutory requirements regarding

---

[1] *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982) (providing factors to consider in determining the reasonableness of attorney's fees).

6

the payment of creditors' claims against the Estate, we reverse the final judgment and remand for further proceedings consistent with this opinion.

¶15.    **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY AND EMFINGER, JJ., CONCUR. LAWRENCE, J., NOT PARTICIPATING.**